# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA J. ROSSBACH, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| VASCO DATA SECURITY INTERNATIONAL, INC., T. KENDALL HUNT, and CLIFFORD K. BOWN, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Linda J. Rossbach ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding VASCO Data Security International, Inc., ("VASCO" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired VASCO securities between February 18, 2014 and July 21, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. VASCO Data Security International, Inc., together with its subsidiaries, designs, develops, markets, and supports hardware and software security systems that manage and secure access to information assets worldwide. VASCO Data's computer security subsidiaries include VASCO Data Security, Inc. in Illinois, and VASCO Data Security nv/sa of Belgium. The Company sells its security solutions through its direct sales force, distributors, resellers, and systems integrators. VASCO was founded in 1991, is headquartered in Oakbrook Terrace, Illinois, and its shares trades on the NASDAQ under the ticker symbol "VDSI".

3. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) VASCO's products were illegally sold to parties in Iran in violation of federal laws prohibiting such sales; (2) the Company lacked adequate internal controls; and (3) as a result of the foregoing, VASCO's public statements were materially false and misleading at all relevant times.

4. On July 21, 2015, after the market closed for trading, VASCO filed a Form 8-K with the SEC announcing "that certain of its products which were sold by a VASCO European

subsidiary to a third-party distributor may have been resold by the distributor to parties in Iran, potentially including parties" subject to U.S. economic sanctions. Additionally, the 8-K stated, in part:

> The Audit Committee of the Company's Board of Directors has initiated an internal investigation to review this matter with the assistance of outside counsel. VASCO has stopped all shipments to such distributor pending the outcome of the investigation which will include a review and recommendations to improve, if necessary, VASCO's applicable compliance procedures regarding these matters.
>
> As a precautionary matter, concurrent initial notices of voluntary disclosure were submitted on June 25, 2015 with each of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), and the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"). The Company will file a further report with each of OFAC and BIS after completing its review and fully intends to cooperate with both agencies. Total VASCO revenues from all sales to the particular distributor during the period relevant to review by OFAC and BIS (June 1, 2010 through June 25, 2015) were approximately $3.1 million.

5. As a result of this news, shares of VASCO fell $0.86, or over 3.22%, on unusually heavy volume, to close at $25.83 on July 22, 2015.

6. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired VASCO securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant VASCO is a Delaware corporation with its principal executive offices located at 1901 South Meyers Road Suite 210 Oakbrook Terrace, IL 60181. VASCO's common stock trades on the NASDAQ under the ticker symbol "VDSI."

13. Defendant T. Kendall Hunt ("Hunt") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

14. Defendant Clifford K. Bown ("Bown") has served at all relevant times until October 1, 2013 as the Company's Chief Financial Officer ("CFO").

15. The defendants referenced above in ¶¶ 13 and 14 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16. VASCO Data Security International, Inc., through its operating subsidiaries,

designs, develops, markets, and supports open standards-based hardware and software security systems. The Company's systems manage and secure access to information assets. VASCO's computer security subsidiaries include VASCO Data Security, Inc. in Illinois, and VASCO Data Security nv/sa of Belgium. VASCO was founded in 1991, is headquartered in Oakbrook Terrace, Illinois, and its shares trades on the NASDAQ under the ticker symbol "VDSI".

## Materially False and Misleading Statements Issued During the Period

16. On February 18, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013. For the fourth quarter, the Company announced net income of $3.23 million, or $0.08 per share on a diluted basis, on revenue of $43.27 million, compared to net income of $2.02 million, or $0.05 per share on a diluted basis, on revenue of $38.84 million for same period in the prior year. For the full year, the Company reported net income of $11.5 million, or $0.28 per diluted share, on revenue of $155.05 million, compared to net income of $15.60 million, or $0.40 per diluted share, on revenue of $154.03 million for the prior year.

17. On March 12, 2014, the Company filed a Form 10-K with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly and fiscal year-end financial results and financial position. In addition, the 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

18. On April 24, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31,

2014. The Company reported net income of $3.51 million, or $0.09 per diluted share, on revenue of $38.82 million, compared to net income of $2.79 million, or $0.07 per diluted share, on revenue of $35.37 million, for the same period in the prior year.

19. On May 6, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20. On July 24, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ending June 30, 2014. The Company reported net income of $6.89 million, or $0.17 per diluted share, on revenue of $47.65 million, compared to net income of $1.81 million, or $0.05 per diluted share, on revenue of $37.26 million, for the same period in the prior year.

21. On August 5, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22. On October 28, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter ending September 30, 2014. The Company reported net income of $11.16 million, or $0.28 per diluted

share, on revenue of $52.63 million, compared to net income of $3.32 million, or $0.08 per diluted share, on revenue of $39.16 million, for the same period in the prior year.

23. On November 4, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On February 17, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2014. For the fourth quarter, the Company announced net income of $11.92 million, or $0.30 per share on a diluted basis, on revenue of $62.43 million, compared to net income of $3.23 million, or $0.08 per share on a diluted basis, on revenue of $43.27 million for same period in the prior year. For the full year, the Company reported net income of $33.48 million, or $0.85 per diluted share, on revenue of $201.54 million, compared to net income of $11.5 million, or $0.28 per diluted share, on revenue of $155.05 million for the prior year.

25. On March 13, 2015, the Company filed a Form 10-K with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly and fiscal year-end financial results and financial position. In addition, the 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26. On April 28, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31, 2015. The Company reported net income of $13.63 million, or $0.34 per diluted share, on revenue of $65.14 million, compared to net income of $3.51 million, or $0.09 per diluted share, on revenue of $38.82 million, for the same period in the prior year.

27. On May 5, 2015, the Company filed a Form 10-Q with the SEC which was signed by Defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunt and Bown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28. The statements referenced in ¶¶ 17-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) VASCO's products were illegally sold to parties in Iran in violation of federal laws prohibiting such sales; (2) the Company lacked adequate internal controls; and (3) as a result of the foregoing, VASCO's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

29. On July 21, 2015, after the market closed for trading, VASCO filed a Form 8-K with the SEC announcing "that certain of its products which were sold by a VASCO European subsidiary to a third-party distributor may have been resold by the distributor to parties in Iran, potentially including parties" subject to U.S. economic sanctions. Additionally, the 8-K stated, in part:

> The Audit Committee of the Company's Board of Directors has initiated an internal investigation to review this matter with the assistance of outside counsel. VASCO has stopped all shipments to such distributor pending the outcome of the investigation which will include a review and recommendations to improve, if necessary, VASCO's applicable compliance procedures regarding these matters.
>
> As a precautionary matter, concurrent initial notices of voluntary disclosure were submitted on June 25, 2015 with each of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), and the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"). The Company will file a further report with each of OFAC and BIS after completing its review and fully intends to cooperate with both agencies. Total VASCO revenues from all sales to the particular distributor during the period relevant to review by OFAC and BIS (June 1, 2010 through June 25, 2015) were approximately $3.1 million.

30. As a result of this news, shares of VASCO fell $0.86, or over 3.22%, on unusually heavy volume, to close at $25.83 on July 22, 2015.

31. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired VASCO securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, VASCO securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VASCO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of VASCO;

- whether the Individual Defendants caused VASCO to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of VASCO securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- VASCO securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold VASCO securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of VASCO securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire VASCO securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for VASCO securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about VASCO's finances and business prospects.

45. By virtue of their positions at VASCO, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of VASCO securities from their personal portfolios.

47. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of VASCO, the Individual Defendants had knowledge of the details of VASCO's internal affairs.

48.	The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of VASCO. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to VASCO's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of VASCO securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning VASCO's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired VASCO securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

49.	During the Class Period, VASCO securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of VASCO securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of VASCO securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of VASCO securities declined

sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of VASCO, and conducted and participated, directly and indirectly, in the conduct of VASCO's business affairs. Because of their senior positions, they knew the adverse non-public information about VASCO's misstatement of income and expenses and false financial statements.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to VASCO's financial condition and results of operations, and to correct promptly any public statements issued by VASCO which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which VASCO disseminated in the marketplace during the Class Period concerning VASCO's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause VASCO to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of VASCO within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of VASCO securities.

56. Each of the Individual Defendants, therefore, acted as a controlling person of VASCO. By reason of their senior management positions and/or being directors of VASCO, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, VASCO to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of VASCO and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by VASCO.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 28, 2015

Respectfully submitted,

**POMERANTZ, LLP**

*/s/ Patrick V. Dahlstrom*
Patrick V. Dahlstrom
Louis C. Ludwig
POMERANTZ LLP
10 South LaSalle Street
Chicago, Illinois 60603
Phone: 312-377-1181

Jeremy A. Lieberman
J. Alexander Hood II
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Phone: 212-661-1100
*Attorneys for Plaintiff*